1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTIE N.,

              Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 2:22-CV-1305-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's testimony by failing to provide clear and convincing evidence for rejecting her alleged symptoms and limitations. Had the ALJ properly considered the medical opinion evidence and lay witness evidence in light of that testimony, the ALJ may have found

further limitations in her residual functional capacity or found Plaintiff disabled. Thus, the ALJ's error is therefore harmful, and this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff filed applications for DIB and SSI on May 23, 2017, and December 5, 2017, respectively, alleging a disability onset date of April 23, 2016. AR 1434. Plaintiff's applications were denied initially and on reconsideration. AR 99-111, 112-32. Plaintiff was 27 years old on the alleged disability onset date and is currently 34 years old. AR 1449.

ALJ Timothy Mangrum held a hearing on January 16, 2019. AR 57-98. On May 17, 2019, ALJ Mangrum issued a decision finding Plaintiff not disabled. AR 36-48. On April 8, 2020, the Social Security Appeals Council ("Appeals Council") denied Plaintiff's request for review. AR 1-7. Plaintiff appealed and on December 29, 2020, the United States District Court, Western District of Washington reversed and remanded the case for a *de novo* hearing, pursuant to a stipulation signed by the parties. AR 1535-7. Specifically, the Court noted that the ALJ should re-evaluate the medical opinion evidence, claimant's statements, lay witness evidence, the residual functional capacity, and the findings at steps four and five, as necessary. AR 1536.

On remand, ALJ Mangrum held a hearing on November 4, 2021. AR 1463-1500. On January 5, 2022, ALJ Mangrum issued a decision finding Plaintiff not disabled. AR 1431-1462. In doing so, ALJ Mangrum found Plaintiff had the severe impairments of somatic symptom disorder, allergies, chemical sensitivity, generalized anxiety disorder, generalized depressive disorder, and autism spectrum disorder.[1] *See* AR 1437. However, the ALJ found Plaintiff does

---

[1] The ALJ found Plaintiff's mild cannabis use disorder to be non-severe. *See* AR 1437.

1  not have an impairment or combination of impairments that meets the listings in 20 C.F.R. § 404,

2  Subpt. P, App. 1, 3.00, 8.00, 12.04, 12.06, 12.07, and 12.10. *See* AR 1438. The ALJ further

3  found Plaintiff had the residual functional capacity to perform light work with the following

4  limitations: Plaintiff must avoid even moderate exposure to pulmonary irritants such as fumes,

5  odors, dusts, and gases. *See* AR 1440. *Id*. She can work in no more than a moderate noise

6  environment (level 3). *Id*. She is capable of unskilled, semi-skilled, and some detailed-type work.

7  *Id*. She cannot have personal face-to-face interaction with the general public. *Id*. She can have

8  only incidental interaction with co-workers with no tandem tasks. She will not be productive for

9  5% of the workday. *Id*. The ALJ found Plaintiff is unable to perform any past relevant work but

10  there were jobs in the national economy Plaintiff can perform. AR 1449-50. Thus, the ALJ found

11  Plaintiff has not been under a disability from April 23, 2016, through January 10, 2022, the date

12  of the ALJ's decision. AR. 1451.

13  The Appeals Council denied Plaintiff's request for review on July 27, 2022. AR 1425-7.

14  Plaintiff now seeks this Court's review of the ALJ's January 10, 2022, decision. In her Opening

15  Brief, Plaintiff maintains the ALJ erred by: (1) failing to give clear and convincing reasons for

16  rejecting Plaintiff's testimony; (2) failing to properly consider the lay witness statements; and (3)

17  failing to give legally sufficient reasons for rejecting the opinion of treating provider Tera

18  Mangum, ARNP, and Drs. Dana Harmon, Ph.D., and Brenda Havellana, Ph.D. Dkt. 14 at 1.

19  <u>STANDARD OF REVIEW</u>

20  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21  social security benefits if the ALJ's findings are based on legal error or not supported by

22  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

23  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

24

<u>DISCUSSION</u>

**I.     Whether the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony.**

Plaintiff contends the ALJ's reasons for rejecting plaintiff's testimony are not clear and convincing. Dkt. 11 at 4. Specifically, Plaintiff contends that "scents from everyday products and other triggers cause her to have a reaction that includes the inability to focus or perform basic mental tasks, pain, fatigue, and other symptoms." Dkt. 11 at 3. Plaintiff states that when working she needed to take off two days every two weeks due to symptoms. Dkt. 11 at 3 (citing AR 62-83).

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling ("SSR") 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms. . . ." *Id*. Once the claimant meets this first step, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . . ." *Id*. Where plaintiff has presented objective medical evidence of an underlying medically determinable impairment that could cause the alleged symptoms and there is no evidence of malingering, the ALJ can only reject the severity of plaintiff's testimony by providing "specific, clear, and convincing evidence" supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id* at 1163.

1    Here, the ALJ found Plaintiff's medically determinable impairments could cause the

2    alleged symptoms. AR 1441. However, the ALJ found Plaintiff's statements concerning the

3    intensity, persistence, and limiting effects of her symptoms were not consistent with the medical

4    and other evidence. *Id*. The ALJ did not find, nor did the Commissioner argue, that there was

5    evidence of malingering.[2] Thus, the ALJ must provide specific, clear, and convincing reasons for

6    finding that the intensity, persistence, and limiting effects of her symptoms resulting from the

7    scents from everyday products and other environmental triggers are not consistent with the

8    medical and other evidence. *Ghanim*, 763 F.3d at 1163.

9    The ALJ reasoned that: 1) the longitudinal medical record includes a number of

10   subjective reports with respect to her physical symptoms, but generally lacks corroborating

11   objective medical signs, *see* AR 1442; 2) the longitudinal record "repeatedly documents negative

12   objective signs, inconsistent with the allegations of debilitating psychological symptoms," *see*

13   AR 1444; and 3) Plaintiff's activities of daily living are inconsistent with allegations concerning

14   the limiting effects of her symptoms. *See* AR 1444.

15       A)  Lack of Objective Physical Findings

16   Plaintiff argues that the ALJ is "forestalled" from rejecting her subjective complaints

17   based on objective physical findings because her severe mental impairments disrupt her function

18   even in the absence of objective physical findings. Dkt. 11 at 4. Specifically, Plaintiff states that

19   whether or not she established the existence of physical symptoms, she is disabled due to

20   somatoform disorder, autism spectrum disorder, and anxiety disorder, which cause her to

21

22   _____

23       [2] On April 25, 2019, in a case narrative for the Division of Vocational Rehabilitation, the case worker noted
     that "[i]n the medical info she brought in today I do not see any suspicions from her providers of avoidant or
     malingering behaviors." AR 2654. "She is described as being very motivated to rise above her conditions and return

24   to work." *Id*. Dr. Harmon noted that there is no evidence of malingering. AR 2670.

structure her life to avoid exposure that, from her perspective, trigger her symptoms. *Id*. at 5, 12.

Plaintiff testified that when she is around common scents she gets rashes, nerve pain, and headaches, which vary in intensity depending on the length of time she is exposed. AR 1477. She also can't think straight. AR 1478. The ALJ noted Plaintiff complained of an electrical sensitivity and difficulty being around Wi-Fi, phones, computers, and anything wireless because she experiences nerve pain and a lack of energy. AR 1442; *see also* 1478-9. The ALJ further noted Plaintiff was assessed with headaches, fatigue, allergies, chemical sensitivity, and unspecified inflammatory and toxic neuropathy with chemical sensitivity. AR 1442-3.

However, the ALJ rejected Plaintiff's severe environmental sensitivities and related symptoms as inconsistent with the objective evidence in the longitudinal record. For example, the ALJ found examination of her skin unremarkable, she exhibited normal respiratory functioning, neurological signs were normal, and no overt signs of discomfort, fatigue, or agitation. AR 1443. The ALJ further noted Plaintiff's inability to work around computer and wireless is not explained or verified in the record. AR 1442. The ALJ also noted Plaintiff presented to the emergency room for anaphylaxis, after giving herself epinephrine, but her reporting could not be corroborated with objective evidence. *Id*.

As noted by Plaintiff, the ALJ found she also suffers from the severe mental impairments of somatic symptom disorder, generalized anxiety disorder, generalized depressive disorder, and autism spectrum disorder. Somatic symptom and related disorders "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.07. "These disorders may also be characterized by a

1  preoccupation with having or acquiring a serious medical condition that has not been identified

2  or diagnosed." *Id*. Symptoms and signs may include, *inter alia*, pain, other abnormalities of

3  sensation, gastrointestinal symptoms, fatigue, and a high level of anxiety about personal health

4  status. *Id*.

5    The Commissioner cites to *Chaudhry v. Astrue*, 688 F.3d 661 (9th Cir.2012), to argue

6  that "the ALJ's finding that the claimant lacked credibility is not undermined by diagnoses like

7  somatization that stem from claimant's lack of credibility." Dkt. 12 at 3. However, the facts in

8  *Chaudhry* are not analogous to the facts in this case. In *Chaudhry*, the ALJ did not find

9  somatization or depression to be severe impairments; thus, the ALJ's findings were based on

10  severe physical impairments and not severe mental impairments. *Chaudhry*, 688 F.3d at 666.  In

11  *Chaudhry*, the Ninth Circuit affirmed the ALJ's discounting of a physician's opinion regarding

12  exertional limitations where they were influenced by the physician's mistaken belief that his

13  wheelchair was prescribed, when providers told Chaudhry he did not need a wheelchair or a

14  cane. *Chaudhry*, 688 F.3d at 671-2. As a result, the Ninth Circuit found Chaudhry's argument

15  that the examining physician's diagnosis of somatization disorder outweighed the reviewing

16  physician's finding of malingering unpersuasive because the diagnosis of somatization was also

17  based on the erroneous belief that the claimant was prescribed a wheelchair. *Id*. at 672.

18    Here, the ALJ did not find malingering. The ALJ found both severe physical and mental

19  impairments and there is no evidence that the physicians' diagnosis of Plaintiff's somatic

20  symptom disorder was based on misinformation. Instead, there is evidence in the record

21  supporting Plaintiff's diagnosis of somatic symptom disorder. *See* AR 1152;1162,1323, 2675,

22  16-18 (noting Plaintiff meets criteria for severe somatic symptom disorder). Thus, the fact that "a

23  claimant's physical complaints are not substantiated by objective clinical findings . . . does not

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1   alone call into question the existence of a somatization disorder or assessed limitations stemming

2   therefrom." *Cheth v. Colvin*, No. 215CV00248RAJKLS, 2015 WL 10044280, at *3 (W.D. Wash.

3   Nov. 16, 2015), *report and recommendation adopted*, No. 215CV00248RAJKLS, 2016 WL

4   524258 (W.D. Wash. Feb. 10, 2016); *see also Jacob M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-

5   CV-02000-MC, 2019 WL 2267303, at *3 (D. Or. May 28, 2019) (stating that where the ALJ

6   implicitly acknowledged that the origins of Plaintiff's symptoms could have been psychological

7   in nature, an ALJ cannot rely upon a lack of corroborating clinical evidence to reject a claimant's

8   symptom testimony).

9       Therefore, the ALJ's finding that Plaintiff's physical symptoms lack corroborating

10  objective medical signs is not alone "specific, clear, and convincing evidence" to reject

11  Plaintiff's testimony regarding the severity of her symptoms and limitations, given her severe

12  somatic symptom disorder and other severe mental impairments.[3]

13      B) Lack of Objective Signs of Psychological Symptoms

14      Plaintiff argues that, in reasoning that the records document negative objective signs

15  which are inconsistent with her allegations of debilitating psychological symptoms, the ALJ

16  "utterly failed to acknowledge significant behavior in the record related to Plaintiff's avoidance

17  of chemical and other sensitivities which would preclude any work activity." Dkt. 11 at 5. As

18  such, Plaintiff argues that the ALJ's finding that her behavior and affect are normal is not

19

20

---

21  [3] In addition to finding severe somatic symptom disorder, the ALJ also found Plaintiff suffers from the
    severe impairments of generalized anxiety disorder, depressive disorder, and autism spectrum disorder. AR 1437.

22  "Anxiety disorders and depressive disorders may accompany somatic symptom and related disorders." *Somatic
    Symptom and Related Disorders*, Diagnostic & Statistical Manual of Mental Disorders, 5th ed. S2H9 (May 2013
    update). "The somatic component adds severity and complexity to depressive and anxiety disorders and results in

23  higher severity, functional impairment, and even refractoriness to traditional treatments." *Id*. The ALJ also found
    Plaintiff suffers from severe autism spectrum disorder. AR 143. Symptoms of autism spectrum disorder may

24  include, *inter alia*, unusual responses to sensory stimuli and behavioral difficulties. *See* 20 C.F.R. § Pt. 404, Subpt.
    P, App. 1, Listing 12.10.

1  supported by substantial evidence and is not a clear, and convincing reason to reject her

2  testimony. Dkt. 11 at 10.

3    In finding that the record is inconsistent with Plaintiff's allegations of debilitating

4  psychological symptoms, the ALJ cited to several pages of the record showing normal mood and

5  affect, normal behavior, normal judgment, and normal thought content. AR 1444; 1443. The ALJ

6  also noted Plaintiff had intact remote memory, logical thinking, and cooperated during

7  examinations. AR 1444. However, the ALJ's citation to her mental health treatment notes is

8  selective, failing to recognize the significant number of notations in the record where Plaintiff

9  presented during sessions as tearful, anxious, and depressed. *See* Dkt. 11 at 9-10 (citing *e.g.*

10  tearing during sessions, blunt affect and anxious, crying, and depressed affect). In addition, the

11  ALJ failed to recognize the accommodations for Plaintiff's avoidant behavior made by her

12  therapists during sessions. *See* AR 1170, 1180, 1212, 1215 (could not meet in the office for

13  therapy because the scent was too strong; had to change offices); AR 1218-1343 (conducted

14  therapy in Plaintiff's car for numerous sessions to avoid Plaintiff's exposure to scents).

15    In noting Plaintiff's normal behavior, the ALJ also failed to recognize her requested

16  accommodations to avoid her reported reactions to exposure from scents, electronics, chemicals,

17  noise (ticking clocks), and visual stimuli (striped shirts and blinds) and reported reactions. For

18  example, she reported at a follow-up appointment for her allergies that she works in a cubicle

19  away from other workers, but they still walk by wearing heavy perfume. AR 1038. When that

20  happens her throat feels like it is closing and her lips get numb and prickly, her clothes are so

21  saturated with scents that it makes her sick and she had to use a special protocol to wash them.

22  *Id.* Plaintiff had to leave mail outside for several days due to the mail carrier wearing too much

23  perfume. AR 1167. Plaintiff's fingers burn, she gets a zapping sensation, and her head gets

24

cloudy when she finally brings the scented mail inside. *Id*. During a consultative exam with Dr. Havellana, Plaintiff wanted to meet in her car because of office scents, including an unlit scented candle in the office. AR 1224. When denied, she paced for ten minutes but agreed to continue stating that she would be sick and that she couldn't concentrate because of the frequency from the computer. *Id*. Dr. Havellana reported Plaintiff's affect was anxious and intermittently tearful and "struggles with appropriate social interaction given her scent sensitivity." AR 1226. Dr. Havellana opined that it is likely that Plaintiff would find full time vocational setting challenging and unlikely that she could consistently interact appropriately with supervisors, colleagues, or the public. AR 1227; *see also e.g.*, AR 681 (reported wearing a hazmat suit and respirator provided by employer to train another worker); AR 2670 (wearing sunglasses off and on and complaining of noise from clock, WiFi, and computer in evaluation with Dr. Harmon); AR 2653 (could not look at Division of Vocational Rehabilitation ("DVR") worker because lines on shirt bothering her, it helped to turn down lights); AR. 2639 (ticking clock bothering her at DVR meeting; put paper on seat so she would not pick up scent); AR 2646-7 (DVR worker needed to turn off lights, shut down computer, and remove clocks); AR 2163 (asked to have blinds pulled up because lines in blinds distracting her); AR 2623 (wearing sunglasses during meeting and blue cloth gloves; asked to remove clock and hand sanitizers from the interview room).

The ALJ further rejected her allegations concerning the intensity, persistence, and limiting effects of her mental impairments because "the claimant's allegations of debilitating reduction in concentration and inability to interact with others is inconsistent with the multiple psychological evaluations as summarized above which show[] overall normal functioning despite conditions (such as sound, light, electrical fields, etc.) during such examinations." AR 1444. However, it is unclear which evaluations the ALJ is referring to and what the circumstances were

1   during those evaluations.[4] The Court cannot affirm the ALJ's finding which is based on

2   speculation about what conditions may or may not be present at a medical appointment and on

3   the absence of notations regarding abnormal functioning.

4           The Commissioner also cites to records stating Plaintiff "attended medical appointments

5   where she was undoubtedly exposed to cellphone, wifi, and Bluetooth signals, and appeared in

6   no distress." Dkt 12 at 2. However, "[w]e review only the reasons provided by the ALJ in the

7   disability determination and may not affirm the ALJ on a ground upon which he did not rely."

8   *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d

9   871, 874 (9th Cir.2003).

10          Thus, in failing to recognize the impact of Plaintiff's mental impairments of somatic

11  symptom disorder, general anxiety disorder, general depressive disorder, and autism spectrum

12  disorder on her behavior and her ability to maintain substantial gainful employment, the ALJ's

13  reasons are not clear and convincing reasons for rejecting her testimony. *See Soc. Sec. Ruling 16-*

14  *3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, ("SSR 16-3p" (S.S.A. Oct. 25,

15  2017) (noting that ALJ's need "to consider all of the evidence in an individual's record when

16  they evaluate the intensity and persistence of symptoms. . . ."

17          C)   Activities of Daily Living

18          Plaintiff argues the ALJ did not provide legally sufficient reasons for finding that her

19

20          [4] The ALJ also cited this reason in finding the opinions of Drs. Havellana and Harmon unpersuasive. The
       citations noted do not support the ALJ's assertion that these examinations show overall normal functioning despite
21     environmental conditions which contradict her testimony or the physician's testimony regarding the impact of her
       sensitivities on her functioning. *See e.g.,*AR 1855;1881 (normal function at appointments with a naturopathic doctor
22     aware of and treating her for severe chemical sensitivities); AR 2041 (one record from Dr. Swearingen for
       appointment for cervical strain noting normal mood and behavior; additional records note referral to a
23     neurodevelopmental psychiatrist/psychologist (AR 1237) and note Plaintiff's eyes watering from her proximity with
       Plaintiff (AR 2058)); AR 2379; 2395-7 (two appointments that were by telephone and do not provide support for
       concluding that she had normal functioning despite adverse environmental conditions); and AR 2538-9 (a normal
24     mental status examination at the ER when Plaintiff was experiencing/reporting possible seizures).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

1    activities of daily living are inconsistent with her allegations regarding her symptoms and

2    limitations. Dkt. 11 at 10-12. Regarding activities of daily living, the Ninth Circuit repeatedly

3    has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not

4    in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625,

5    639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth

6    Circuit specified "two grounds for using daily activities to form the basis of an adverse

7    credibility determination: (1) whether or not they contradict the claimant's other testimony and

8    (2) whether or not the activities of daily living meet "the threshold for transferable work skills."

9    *Id*. (citation omitted).

10           In determining Plaintiff's activities of daily living were inconsistent with her allegations

11   regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ cites to her

12   capacity to withstand some odors. For example, the ALJ cites to her ability to work part-time as

13   a food delivery driver. AR 1444. However, "[i]t does not follow from the fact that a claimant

14   tried to work for a short period of time and, because of his impairments, *failed*, that he did not

15   then experience [symptoms] and limitations severe enough to preclude him from *maintaining*

16   substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007)

17   (emphases in original). In fact, such evidence in some circumstances may support allegations of

18   disabling symptoms. *Id*. (citation omitted).

19           Here, Plaintiff testified with respect to limitations/accommodations she made in

20   performing these part-time, non-substantial gainful activity, delivery positions. She had to work

21   up her tolerance to using a phone and she used "blue shield to help deal with the electrical stuff

22   with [her] phone." AR.75. She had problems with chemicals on the outside of the delivery bags.

23   *Id*. The chemicals got on her clothes, and she had to throw her clothes out. *Id*. She had trouble

24

1    finding delivery bags that she could tolerate. *Id*. She got strap covers, so she did not have to

2    touch the bags. *Id*. She bought cotton gloves, so she did not have to touch the door handles of

3    buildings. *Id*. If the building was scented, she would call the customer and explain her situation.

4    AR 76-7. She would give them "a couple dollars back on their order" if they would come down

5    and get their food. AR 77. She had to stop working for one delivery service because the service

6    turned on the blue tooth in her car automatically for better GPS and it gave her pain. AR 84.

7    The ALJ also found inconsistent her ability to walk three miles per day, clean, grocery shop, and

8    drive. AR 1444. However, the ALJ failed to consider the way that she performed those activities.

9    For example, Plaintiff testified that she goes to the one specific grocery store right before closing

10   when it is not crowded and avoids the scented parts of the store. AR 82. Family members

11   testified that Plaintiff controlled her home environment by eliminating scented products used by

12   herself and others.[5] AR 343.

13       As such, the ALJ failed to make specific findings on how these activities contradict her

14   testimony and how they are transferable to the workplace, where Plaintiff cannot control her

15   environment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (many home activities are not

16   easily transferable to what may be the more grueling environment of the workplace); *Alicia P. v.*

17   *Comm'r of Soc. Sec. Admin.*, No. 4:22-CV-05034-SAB, 2023 WL 1975232, at *4 (E.D. Wash.

18   Feb. 13, 2023) (finding harmful error where the ALJ failed to appreciate the impact

19   accommodations would have on the claimants ability to engage in full-time employment).

20       Therefore, the ALJ failed to provide specific, clear, and convincing reasons that are

21

22

23       [5] The ALJ also found her ability to tolerate smoke and fumes from cannabis inconsistent with her
     allegations regarding sensitivities to scents. AR. 1444. However, it is not clear from the record and the ALJ's
     citations what the circumstances are with respect to Plaintiff's cannabis use. As such, this reason alone is not a clear
24   and convincing reason supported by substantial evidence to discount Plaintiff's subjective symptom testimony.

1    supported by substantial evidence to discount Plaintiff's testimony with respect to her symptoms

2    and limitations from her mental impairment. An error is harmless only if it is not prejudicial to

3    the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

4    *Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at

5    1115. Here, had the ALJ properly considered Plaintiff's testimony with respect to the impact

6    from her mental impairments, the ALJ may have reconsidered the medical opinion evidence and

7    lay witness evidence, included additional limitations in her RFC, or found Plaintiff disabled. As,

8    such, the ALJ's error is harmful.

9    **II.    Whether the ALJ properly considered the lay witness statements.**

10   Plaintiff argues that the ALJ failed to address the statement of her father and improperly

11   rejected the statements of other family members because they were not "entirely consistent" with

12   the medical evidence. Dkt. 11 at 16. Specifically, she argues that these statements are "quite

13   consistent" with the medical record and Plaintiff's testimony. Dkt. 11 at 16-17.

14   Plaintiff's sister, Katie N., testified that she lived with Plaintiff. She had to adapt to using

15   all new kinds of products, such as shampoo, conditioner, body soap, hair products, shaving

16   cream, deodorant, and laundry soap to prevent her sister from getting sick. AR 343. She cited

17   examples of situations where Plaintiff was exposed to scents from common products and

18   described Plaintiff's symptoms. *Id.*

19   Plaintiff's mother provided her "observations of [Plaintiff's] downhill journey into

20   isolation" following a chemical exposure to concrete sealant used at her previous job. AR. 344-

21   47. She stated that she worsened over time and described the impact that various chemicals or

22   scents have on Plaintiff's health. *Id.* She further discussed the impact that her impairment has on

23   her ability to find a job, on the family, and described the steps Plaintiff has taken to get well. *Id.*

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 14

1    Plaintiff's sister, Emily N., worked with Plaintiff for a month and described the reaction Plaintiff

2    had when exposed to chemicals used by other workers, such as nail polish, perfume, hair spray,

3    hand lotion, sanitizer, deodorant, or cleaning wipes. AR. 376-77.

4           The ALJ considered the statements of Plaintiff's mother and sisters but rejected these

5    statements because, "like the claimant's allegations, the stated limitations are generally

6    inconsistent with the longitudinal medical record. . . ." AR 1449. The ALJ did not discuss the

7    statement from her father in the decision. *See Stout*, 454 F.3d at 1053 (citation omitted) (stating

8    that "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is

9    competent evidence . . . and therefore cannot be disregarded without comment").

10          The new regulations state that an ALJ is "not required to articulate how [they] considered

11   evidence from nonmedical sources" using the same criteria that an ALJ uses for evaluating

12   evidence from medical sources. *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d). However, "the

13   Ninth Circuit has suggested that its pre-2017 standard requiring 'germane' reasons to reject lay

14   witness testimony applies to an ALJ's evaluation of lay witness testimony post-2017. *Cody K. v.*

15   *Comm'r of Soc. Sec.*, No. C22-5288 TLF, 2023 WL 315240, at *5 (W.D. Wash. Jan. 19, 2023)

16   (citing *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at * 2 (9th Cir. Dec. 7, 2022)

17   (applying "germane reasons" standard to ALJ's evaluation of third-party function report from

18   claimant's husband); *Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at * 4 n. 4 (9th

19   Cir. Nov. 23, 2022)). Where an ALJ has provided clear and convincing reasons to discount a

20   claimant's testimony, those reasons are germane reasons for rejecting similar lay witness

21   testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

22          In this case, however, this Court determined that the ALJ did not provide clear and

23   convincing reasons for discounting Plaintiff's testimony. Thus, where the ALJ provided the same

24

1  reasons for discounting the lay witness testimony in which this court has determined to be

2  inadequate to discount Plaintiff's testimony, the ALJ has failed to provide germane reasons for

3  discounting the lay witness testimony. *See Donovan B. v. Acting Comm'r of Soc. Sec.*, No. 3:22-

4  CV-5425-TLF, 2023 WL 1879517, at *7 (W.D. Wash. Feb. 10, 2023) (concluding that the

5  similarity between Plaintiff's testimony and the statements of these lay witnesses cannot serve as

6  a germane reason for discounting the lay witnesses where the ALJ re-stated the same reasons for

7  discounting Plaintiff's testimony that the Court determined to be inadequate.). Therefore, on

8  remand, the ALJ shall reconsider the lay witness statements when reconsidering Plaintiff's

9  testimony.

10  **III.    Whether the ALJ gave specific and legitimate reasons for rejecting the opinion of
11           treating provider Tera Mangum, ARNP, and Drs. Dana Harmon, Ph.D. and Brenda
           Havellana, Ph.D.**

12      Plaintiff argues that the ALJ improperly rejected the opinion of her treating provider

13  ARNP Mangum and Drs. Harmon and Havellana. Dkt. 11 at 12. Specifically, Plaintiff argues

14  that the ALJ improperly found unpersuasive, due to lack of objective evidence, ARNP

15  Mangum's 2016 opinion that Plaintiff had extreme chemical sensitivity requiring Plaintiff to use

16  a chemical filter mask and carbon air purifier in the workplace where Plaintiff suffered from

17  severe somatic symptom disorder and other severe mental impairments. (Dkt. 11 at 13 (citing

18  AR. 1447 (citing 870)). Plaintiff further argues that the ALJ's reasoning that she had normal

19  mood and affect, despite having close contact with some examiner's, is not a specific and

20  legitimate reasons for rejecting Drs. Havellana's and Harmon's opinion that Plaintiff would not

21  be able to sustain competitive work. *Id*.

22      The Court has determined the ALJ harmfully erred in his assessment of Plaintiff's

23  subjective symptom testimony and lay witness testimony. *See* Sections I. and II, *supra*. The ALJ

24

relied on some of the same reasoning to find unpersuasive the medical opinion evidence that the

Court determined was not substantial evidence to discredit Plaintiff's subjective symptom

testimony and lay witness testimony. *Id*. Because Plaintiff will be able to present new evidence

and testimony on remand, and because the ALJ's reconsideration of Plaintiff's testimony and lay

witness testimony may impact the ALJ's consideration of the medical opinion evidence, the ALJ

shall also re-evaluate the medical records and opinion evidence from ARNP Mangrum, Dr.

Havellana, the two opinions from Dr. Harmon.

### IV.    Remedy

Plaintiff argues that, if credited as true, evidence in the record demonstrates that, due to

her somatic symptom disorder, autism spectrum disorder, and anxiety disorder, Plaintiff has

extreme reactions, to common scents such as deodorant, shampoos, perfumes and aftershave

which are commonly present in the workplace. Dkt. 11 at 17. Plaintiff further argues that the

vocational expert testified that there is no job in the general labor market which would not

include some exposure to scents. *Id*. (citing AR 95). Thus, Plaintiff requests that the Court

remand for the calculation of benefits. Dkt. 11 at 19.

"'The decision whether to remand a case for additional evidence, or simply to award

benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir.

2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an

error and the record is uncertain and ambiguous, the Court should remand to the agency for

further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the

Court concludes that additional proceedings can remedy the ALJ's errors, it should remand the

case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand

1  for a direct award of benefits. Such remand is generally proper only where:

2      "(1) the record has been fully developed and further administrative proceedings
       would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
3      reasons for rejecting evidence, whether claimant testimony or medical opinion;
       and (3) if the improperly discredited evidence were credited as true, the ALJ
4      would be required to find the claimant disabled on remand."

5  *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

6  The Ninth Circuit emphasized that even when each element is satisfied, the District Court still

7  has discretion to remand for further proceedings or for award of benefits. *See Leon v. Berryhill*,

8  80 F.3d 1041, 1045 (9th Cir. 2017).

9      The ALJ failed to consider the relationship and impact of Plaintiff's severe somatic

10  symptom disorder and other mental impairments on her reaction to scents and ability to tolerate

11  scents and other chemical odors. Had the ALJ properly considered Plaintiff's testimonial

12  evidence and the medical opinion and other lay witness evidence, the ALJ may have included

13  other limitations in Plaintiff's RFC. As such, the case is reversed and remanded for further

14  administrative hearings, including a *de novo* hearing.

15                          <u>CONCLUSION</u>

16      Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

17  Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

18  this matter is remanded for further administrative proceedings in accordance with the findings

19  contained herein.

20      Dated this 27th day of March, 2023.

21

22                          _David W. Christel_
                            David W. Christel
23                          Chief United States Magistrate Judge

24